# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TOMMIE L. CARTER,

                     Plaintiff,

v.

ALLISON MCGOWAN, AMY GUNDERSON, DEREK SCHAUTEN, and JOEL SANKEY,

                     Defendants.

Case No. 16-CV-838-JPS

**ORDER**

        Plaintiff, who is incarcerated at Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on several of Plaintiff's recently filed motions, including: (1) a motion to compel discovery responses (Docket #20); (2) a motion for preliminary injunction and temporary restraining order (Docket #21); (3) two motions for protective order (Docket #22 and #23); and (4) a motion for sanctions (Docket #24). Defendants oppose each of these motions. (Docket #27). Plaintiff filed a short reply letter (Docket #28), and so the motions are now ripe for resolution. For the reasons stated below, all of Plaintiff's motions will be denied.

**1.    Motion to Compel Discovery Responses**

        Plaintiff's first motion requests that the Court address Defendants' failure to respond to his discovery requests within the time provided by the Federal Rules of Civil Procedure. (Docket #20 at 1). After receiving his discovery requests in late November 2016, Defendants' counsel sent Plaintiff a letter stating that she would provide responses after the Christmas holidays because of short-staffing and the breadth of the requests. *Id.* Plaintiff objects to this, noting that he did not consent to an extension of time. *Id.* Defendants

rejoin that they responded to Plaintiff's discovery requests within thirty-seven days of service and produced over 300 pages of documents. (Docket #27 at 2). Defendants believe that Plaintiff has a litigation strategy of serving "oppressive amounts of discovery" while unfairly refusing to countenance even minor extensions of time. *Id.*

Whatever his litigation strategy may be, Plaintiff's motion must be denied. Plaintiff did not certify that he first made a good-faith effort to meet and confer with Defendants' counsel about the subject of his motion before seeking the Court's intervention, as is required by the Federal Rules of Civil Procedure and the Court's Local Rules. Fed. R. Civ. P. 37(a)(1); Civ. L. R. 37. Although he received a letter from defense counsel about the anticipated date she would respond to his discovery requests, he did not actually confer with her regarding his objection to her proposed extension. The purpose of Federal and Local Rule 37 is to avoid just this sort of unnecessary court involvement in minor discovery disagreements. *Ross v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 08–CV–230, 2008 WL 5129941, at *1 (E.D. Wis. Dec. 5, 2008) ("The court has neither the time, nor the inclination to act as a referee in every minor dispute between the parties during discovery."). For this reason, the motion will be denied. *Williams v. Frank*, No. 06C1051, 2007 WL 1217358, at *1 (E.D. Wis. Apr. 19, 2007) (enforcing Local Rule 37 meet-and-confer requirements against *pro se* prisoner).[1]

**2.      Motion for Protective Order Related to Destruction of Records**

Plaintiff's first motion for protective order concerns the alleged destruction of evidence. Plaintiff claims that disciplinary records in

---

[1] It also appears that Plaintiff's motion is moot—Defendants have now served their discovery responses, and Plaintiff sought no relief other than to compel Defendants' responses.

Defendants' personnel files will be "purged" after one year's time, thereby destroying material relevant to his claims, which occurred in 2015. (Docket #22). Defendants state that no such documents exist because none of them were disciplined in relation to their interactions with Plaintiff. (Docket #27 at 2–3). Thus, in Defendants' view the motion is moot. *Id.* The Court agrees—Plaintiff's fear of possible spoliation is grounded in pure speculation, not in fact. Plaintiff's reply in support of his motions does nothing to aid his argument, since he merely accuses defense counsel of lying. *See* (Docket #28). This motion will, therefore, be denied.

3.  **Motions for Preliminary Injunctive Relief, Protective Order, and Sanctions Related to Searches and Suicide Threats**

Plaintiff's remaining motions are related and concern his continuing threats of suicide. Before turning to the motions, however, it is first important to appreciate the nature of this case. After screening, Plaintiff's lone remaining claim relates to his attempted suicide in his cell. Plaintiff alleges that on November 18, 2015, he informed Defendants that he would attempt to commit suicide. (Docket #11 at 3). They did nothing in response to this information, and he thereafter attempted suicide in his cell by cutting himself with a razor and overdosing on acetaminophen. *Id.* at 3–4.

In his motion for preliminary injunctive relief, Plaintiff claims that he was ignored when he recently warned Defendants of renewed plans to commit suicide. (Docket #21 at 1–2). In particular, he requested that he be placed in "observation" status, but those requests were denied. *Id.* He asks that the Court order the prison to place him in observation status and in physical restraints whenever he makes such suicide threats. *See id.* at 3. He argues that Defendants have been inept at keeping him from harming himself

and that the Court should intervene to protect him from himself. *See id.* at 2–3.

Plaintiff's motion for sanctions is based on similar allegations. In it, he seeks sanctions against Defendants for their failure to prevent him from continuing to harm himself. (Docket #24 at 1). For instance, Plaintiff alleges that he has inflicted injuries on himself by scraping himself with staples while Defendants did nothing. *Id.* He also reiterates the claims he made in his motion for injunctive relief concerning his repeated, and ignored, suicide threats throughout December 2016 and January 2017. *Id.* at 1–2. On several occasions, he claims he managed to make himself bleed and smeared blood on his cell and his person, yet officers did not respond. *Id.* at 2. He calls for a "prompt investigation" of his allegations and that the Court order Defendants and other correctional staff to comply with the applicable policies and procedures when Plaintiff threatens suicide. *Id.*

Finally, in his second motion for protective order, Plaintiff contends that correctional officers are repeatedly searching his cell and his person. (Docket #23 at 1). He says the searches occur "almost every other day" and involve officers "shuffling his legal files and strewing them around, hampering his preparation for this case." *Id.* He also claims that there are sometimes late-night searches that include a strip-search of his person. *Id.* He accuses Defendants of trying to interfere with this litigation through these searches. *Id.* at 2. However, Plaintiff also acknowledges that the officers explained that the searches are being done in order to uncover items Plaintiff might use to hurt himself with. *Id.*

Defendants contend that Plaintiff's two motions relating to his continuing threats of self-harm—the motion for preliminary injunctive relief and the motion for sanctions—should be denied. (Docket #27 at 3). Defendants argue that Plaintiff's allegations concern many prison officials

who are not defendants in this case and that Plaintiff inappropriately asks the Court to step in and oversee his mental health treatment. *Id.*

Defendants also provided the declaration of Dr. Torria Van Buren, a psychologist at the prison, who gives a detailed account of Plaintiff's mental health treatment and opines that Plaintiff has been fabricating instances where he threatens self-harm. (Docket #25 at 4). On those instances where Plaintiff in fact expressed suicidal thoughts, he was placed in observation and then released when the danger passed. *Id.* at 5–6. According to the doctor, Plaintiff has expressly threatened to tell other inmates to engage in self-harm, and threatened Defendants with litigation, if Defendants and other prison staff do not respond to his suicide threats as he wishes. *See id.* at 6–7. Dr. Van Buren opines that Plaintiff's behavior is simply an effort to get transferred to another prison, not genuine evidence of suicidality. *Id.* at 9.

Further, Defendants contend that Plaintiff's final motion, relating to the searches of his person and his cell, underscores the impossible position he has placed them in. (Docket #27 at 3). Defendants note that when they search his cell, they find sharp objects that he can and does use to hurt himself. *Id.* If the Court stops these searches, Defendants will be left unable to protect Plaintiff from himself. *See id.* In the face of this catch-22, Defendants urge the Court to defer to their institutional and medical treatment prerogatives. *Id.* at 4.

Plaintiff's motions regarding Defendants' responses to his recent suicide threats must be denied. First, the Court generally will not interfere in matters of prison administration through preliminary injunctive relief. In fact, Congress has expressly cautioned against it. The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, that in considering the need for preliminary injunctive relief, "[t]he court shall give substantial weight to any

adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]" 18 U.S.C. § 3626(a)(2). The Court's reluctance is particularly keen in this case, for despite Plaintiff's complaint that Defendants are mistreating his mental health disorders, the Court itself lacks expertise in such matters.

Nor is the Court confident that it should, based on Plaintiff's word alone, implement his highly specific proposed protocols. The PLRA instructs that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Id.* Plaintiff's opinion on the proper way to simultaneously incarcerate him and treat his suicidal ideation does not meet this standard. Faced with a difficult situation in which an inmate seeks to engage in self-harm nearly constantly, the Court will instead defer to the sound judgment of prison officials. *See Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009) (noting that constantly suicidal inmate presented prison officials with "a dilemma with no easy options").

Moreover, Plaintiff has not satisfied the requisite standards for the relief he seeks. His motion for sanctions cites Federal Rule of Civil Procedure 37, but that Rule exists to remedy discovery misconduct, not an alleged failure to treat a medical condition. *See* Fed. R. Civ. P. 37. Similarly, Plaintiff's submissions do not meet the high threshold required for the entry of preliminary injunctive relief, since he has not shown even a minimal likelihood of success on the merits of his case or that the irreparable harm he fears—his own suicide—is likely to occur in the absence of Court intervention. *See D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (a preliminary injunction

requires a "clear showing that [the plaintiff] is entitled to such relief"). Because preliminary injunctive relief is an extraordinary remedy and is never granted as of right, *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016), Plaintiff is incorrect that mere "continuing deliberate indifference" to his risk of suicide is sufficient, standing alone, to warrant such relief, (Docket #21 at 2). Nor do Plaintiff's threadbare assertions justify what would amount to extreme interference by the Court into prison administration. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (a court must "exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied").

For similar reasons, the Court must deny Plaintiff's motion for protective order relating to the searches of his prison cell and his person. Plaintiff dislikes these searches, but he does not provide evidence that the searches are in fact interfering with his ability to litigate. Additionally, Plaintiff admits that these searches are undertaken in order to keep him from possessing objects he could use to harm himself. Because his suicide threats and attempts form the basis of this entire lawsuit and appear to be ongoing, the searches are not inherently suspect. And, in any event, Plaintiff represents that he has recently transferred prisons, *see* (Docket #28), so his request for a protective order against officials at his former prison is now moot.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to compel discovery responses (Docket #20) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction and a temporary restraining order (Docket #21) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for protective order (Docket #22) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for protective order (Docket #23) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions (Docket #24) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 9th day of February, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge